| | |
|---|---|
| JOE CUNNINGHAM and TAYLOR CUNNINGHAM, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. |
| JACOBS ENGINEERING GROUP, INC. | ) ) |
| Defendant. | ) ) |

## COMPLAINT

COME NOW Plaintiffs, Joe Cunningham and Taylor Cunningham, by and through counsel, for their complaint, allege upon knowledge as to their own acts, and upon information and belief as to the acts of all other parties, as follows:

### STATEMENT OF CASE

This is a civil action brought pursuant to all appropriate legal federal and state authority, for personal injuries and the severe infliction of emotional distress, upon information and belief, due to a medical link because a miscarriage occurred, resulting from continuous unlawful exposure to arsenic, the neurotoxin mercury, barium, strontium, thallium, upon information and belief, asbestos, radioactive material, selenium, lead, silica – quartz, aluminum oxide, iron oxide, calcium oxide, boron, and other hazardous substances associated with toxic fly ash located at TVA Superfund Cleanup Site at the KIF location in Kingston, Tennessee.

## JURISDICTION AND VENUE

1.     All actions complained of herein arose in Roane County, Tennessee where the toxic cleanup occurred and Jacobs Engineering Group, Inc. is a foreign corporation located in Pasadena, California.  Therefore, this Court has Diversity Jurisdiction pursuant to 28 U.S.C. § 1332 as this action is well in excess of seventy five thousand dollars ($75,000.00).

## THE PARTIES

2.     Plaintiff Joe Cunningham is an individual and a citizen of the State of Tennessee.  He currently resides at 254 Twinview Drive, Spring City, Tennessee  37381.

3.     Plaintiff Taylor Cunningham is an individual and a citizen of the State of Tennessee.  She currently resides at 254 Twinview Drive, Spring City, Tennessee  37381.

4.     Defendant Jacobs Engineering Group, Inc. is a foreign corporation with its principal place of business in Pasadena, California.  Jacobs Engineering Group, Inc. was licensed to do business, and was and is doing business, in the State of Tennessee and elsewhere and is directly liable for all actions contained herein.  Jacobs Engineering Group, Inc. may be served through its Registered Agent CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee  37929-9710.

## GENERAL ALLEGATIONS

### The Site

5.     The events described herein took place primarily at the TVA KIF Superfund Cleanup Site in Kingston, Roane County, Tennessee.  Jacobs Engineering Group, Inc. was contracted to provide a safe environment for all employees of various employers who performed Superfund Remediation work at KIF in regards to the ash spill site in Kingston,

Tennessee. One was Joe Cunningham who unintentionally brought home toxins from fly ash that he was told was safe.

<u>Events and Facts Surrounding the Continuous Unlawful Exposure</u>

<u>Incurred by the Plaintiffs</u>

6.     TVA had entered into prime contracts with several companies, including Jacobs Engineering Group, Inc., (the contracted oversees site safety at KIF) and upon information and belief, the contracts with Jacobs Engineering Group, Inc. for millions of dollars for which the purpose was to appropriately provide safety for cleanup of environmental contamination/remediation for the benefit of TVA to protect the taxpaying citizens of Roane County, workers at the Site, and the general area to restore portions of property damaged by the Kingston (KIF) ash spill, and to appropriately repair the KIF fly ash containment structure.

7.     Despite Jacobs Engineering Group, Inc.'s duties under this multi-million dollar agreement to the taxpayers, they misrepresented to workers of other employers at the KIF Site, TVA and the Roane County citizens that the Superfund remediation would be conducted in a timely, safe manner, and upon information and belief, it was intentionally contrary to numerous representations made by the Defendant that <u>fly ash was not harmful to human health</u>.

8.     Plaintiff consented only to healthful physical contact with materials described as non-hazardous substances, and that Defendant intentionally misrepresented to him "<u>you could drink fly ash daily and suffer no adverse health effects</u>."

9.     However, Jacobs Engineering Group, Inc. had in its possession manuals for the fly ash safety that contained vital information on the toxic constituents, of which the

Defendant was intentionally and knowingly aware of how to protect the safety of individuals on Site, as well as informing its workers of other employers of its danger(s). Instead they intentionally lied to the workers about the safety of fly ash constituents.

10. In the Defendant's own possession were documents that referenced toxic constituents and target organs. One example of such information was:

↓ ↓

| CONSTITUENTS | CAS # | SITE ACTION LEVEL[1] | SITE EXPOSURE LIMIT[2] | ROUTES OF EXPOSURE | SYMPTOMS OF EXPOSURE | TARGET ORGANS | NIOSH METHODS |
|---|---|---|---|---|---|---|---|
| SILICA – QUARTZ[3] RESPIRABLE | 14808-60-7 | 0.025 MG/M[3] | 0.050 MG/M[3] | INHALATION, SKIN AND/OR EYE CONTACT, INGESTION | COUGH, DYSPNEA WHEEZING, PROGRESSIVE RESPIRATORY SYMPTOMS (SILICOSIS), IRRITATION EYES | EYES, RESPIRATORY SYSTEM | 7500 7601 7602 |
| CRISTOBALITE | 14464-46-1 | | | | | | |
| ALUMINUM OXIDE | 1344-25-1 | 2.5 MG/M[2] | 5 MG/M[3] | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, RESPIRATORY SYSTEM | EYES, SKIN, RESPIRATORY SYSTEM | 0500 0600 |
| IRON OXIDE | 1309-37-1 | 2.5 MG/M[2] | 5 MG/M[3] | INHALATION, INGESTION | BENIGN, PNEUMOCONIOSIS | RESPIRATORY SYSTEMS | 7300 7301 7303 9102 |
| CALCIUM OXIDE | 1305-78-8 | 2.5 MG/M[2] | 5 MG/M[2] | INHALATION, INGESTION, SKIN AND/OR EYE CONTACT | IRRITATION EYES, SKIN, UPPER RESPIRATORY TRACT, ULCER, PERFORATION, NASAL SEPTUM | EYES, SKIN, RESPIRATORY SYSTEM | 7020 7303 |
| ARSENIC[4] (INORGANIC) | 7440-38-2 | 0.005 MG/M[3] | 0.01 MG/M[1] | INHALATION, SKIN ABSORPTION, SKIN AND/OR EYE INGESTION | ULCERATION OF NASAL SEPTUM, DERMATITIS, GASTROINTESTINAL DISTURBANCE, PERIPHERAL NEUROPATHY, RESPIRATORY IRRITATION | LIVER, KIDNEYS, SKIN, LUNGS, LYMPHATIC SYSTEM | 7300 7301 7303 7900 9102 |

1. Based on 50% of the 8 hour site exposure limit
2. Based on the lower of the values recognized by OSHA or the ACGIH. Crystalline silica value is based on TOSHA since crystalline is typically lower than the sample-specific calculated OSHA level
3. Suspected human carcinogen
4. Confirmed human carcinogen

4-16

11.     As referenced in Paragraph 9, at all times, Jacobs Engineering Group, Inc. had full access to the manuals' specialized information, and based upon information and belief, the level commercial sophistication that they knew of the appropriate danger and should have protected all near the KIF Ash Spill, including, but not limited to, unborn fetuses.

12.     Based upon statement and facts learned from workers, the Defendant engaged in intentional improper air monitoring of the fly ash in violation of federal and state laws.

13.     Based upon later information acquired by Plaintiff, Joe Cunningham was intentionally subjected to inadequate safety training in regards to the hazards associated with inhaling toxic fly ash.

14.     Based upon information acquired by Plaintiff, Joe Cunningham was subjected to inadequate medical monitoring regarding the hazardous fly ash constituents.

15.     Plaintiff Joe Cunningham worked long hours per day in close proximity with toxic fly ash constituents.

16.     The fly ash dust and debris material was inhaled and on occasion would become imbedded in the referenced Plaintiff's skin, and entrapped in Mr. Cunningham's clothing.  Mr. Cunningham, in turn, innocently brought said material home in his clothing to his spouse to her detriment.

17.     Consequently, Plaintiff was improperly exposed to high concentrations of these fly ash toxic constituents while working on the Superfund Site at KIF for a prolonged duration of time in violation of TVA nondiscretionary directives and as with others similarly situated, toxic substances lowered his testosterone levels.

18.     Failure to provide hazardous materials workers with personal protective equipment is a violation of federal and state worker protection law.

19.     The Defendant intentionally did not require the ash to be handled, abated, or disposed in accordance with requirements for management and disposal of such substances despite Plaintiff's exposure.

20.     Defendant fraudulently concealed and continued to deny the fact that Plaintiff Joe Cunningham had been exposed to hazardous substances.

21.     Upon information and belief, the fly ash constituents and other hazardous substances have remained unsafely present in the air, soil and water at the Site until the present time.

22.     Joe Cunningham continued to suffer exposure to these hazardous substances for as long as he worked at the Site, and said ash became entrapped upon or in the clothing of the Plaintiff to which he brought home to his residence.

23.     The effects of continued exposure to such hazardous substances have resulted in cumulative negative health impacts on Plaintiff, including but not limited to eye problems, sinus problems, pulmonary problems, heart problems and other health-related problems as indicated by Jacobs Engineering Group, Inc.'s own internal documents, some of which is referenced in Paragraph 10.

24.     The effects of Joe Cunningham's continued exposure and lack of adequate cleaning protocols caused him to bring toxic substances home to his wife causing her to be exposed.  The combined exposure to the Plaintiffs caused the Plaintiff Taylor Cunningham to have a miscarriage according to treating medical personnel.

<u>FIRST CLAIM FOR RELIEF</u>

25.     Plaintiffs refer to and reallege Paragraphs 1 through 24 of this Complaint and incorporate them by this reference, as though fully set forth herein.

26.     Plaintiffs hereby assert their cause of action for Outrageous Conduct. Defendant's intentional knowing, wanton, and willful exposure of Plaintiff, who worked for other employers at KIF, to toxic fly ash constituents, and other hazardous substances and intentional denial of personal protective equipment and proper cleaning mechanisms to Plaintiff would be perceived as outrageous by any reasonable person, and not tolerated in a just, civilized society.

27.     Defendant acted with the reckless or intent to cause Plaintiffs' emotional distress, by disregarding whether or not exposing Plaintiffs to hazardous substances would cause emotional distress.

28.     Defendant's exposure of Plaintiffs to hazardous substances and denial of personal protective equipment, respirators, and proper cleaning protocols to Plaintiffs has caused them to suffer emotional distress to a degree that no reasonable person should be expected to suffer including, but not limited to, the miscarriage of their unborn child according to a trained medical professional due to the ash accumulating and becoming entrapped on Mr. Cunningham's clothing.

29.     As a direct and proximate result of Defendant's outrageous conduct, Plaintiff, who worked for employers at KIF, and had toxic materials brought home has suffered and is reasonably certain to suffer injury, increased risk of disease, liver, kidney, lungs, heart, sinus and skin problems, medical monitoring costs, pain and suffering, mental anguish, other personal injuries and other damages, with the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Battery

30.    Plaintiffs refer to and reallege Paragraphs 1 through 29 of this Complaint and incorporate them by this reference, as though fully set forth herein.

31.    Plaintiffs hereby assert their cause of action for Battery.

32.    Defendant knew that the toxic fly ash contained hazardous substances, including, but not limited to, arsenic before and during remediation activities.

33.    Defendant nevertheless intentionally knowingly, wantonly, and willfully caused such hazardous substances to come into physical contact with Plaintiff who worked for other employers on site.

34.    Such physical contact with hazardous substances in such manner was harmful and unwanted.

35.    Plaintiffs did not consent to such type of physical contact with any hazardous substances.

36.    As a direct and proximate result of Defendant's causing Plaintiffs to suffer harmful physical contact with hazardous substances contained in fly ash, Plaintiffs have suffered injury or are reasonably certain to suffer increased risk of disease and illness, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### Negligence

37.    Plaintiffs refer to and reallege Paragraphs 1 through 36 of this Complaint and incorporate them by this reference, as though fully set forth herein.

38.     Plaintiffs hereby assert their cause of action for negligence.

39.     Defendant knew that the fly ash contained arsenic and other previously referenced hazardous substances, before and during remediation activities.

40.     Defendant had an obligation to the United States Environmental Protection Agency ("EPA") to ensure that hazardous substances at the Site were handled and disposed of properly.

41.     The EPA's CERCLA remediation order is intended to protect a class of persons that includes Plaintiffs.

42.     Defendant Jacobs Engineering Group, Inc. had a specific duty pursuant to its obligations to TVA and others to properly sample and dispose of any hazardous substances in a safe and proper manner, implement an adequate safety plan, and properly ensure appropriate safety training for all those working and performing activities on Site at KIF.

43.     Jacobs Engineering Group, Inc. had a duty that was intended to protect a class of persons that includes Plaintiff even though he worked for other employers on site.

44.     The Defendant further owed Plaintiffs a duty not to expose them to the hazardous substances in an unsafe manner.

45.     Defendant's knowing, wanton, and willful failure to properly handle the hazardous substances contained in fly ash and to provide personal protection equipment, in light of their knowledge of the presence of such substances on Site, constituted a breach of that duty to all who were present on site and the citizens of Roane County.

46.     Defendant's breach of duty caused Plaintiffs to be continually exposed to toxic fly ash constituents.

47.     As a direct and proximate result of Defendant's negligence, Plaintiffs have suffered injury or are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Negligence *Per Se*

48.     Plaintiffs refer to and reallege Paragraphs 1 through 47 of this Complaint and incorporate them by this reference, as though fully set forth herein.

49.     Plaintiffs hereby assert their cause of action for Negligence *per se.*

50.     United States Occupational Safety and Health Administration ("OSHA") regulations establish the standard of care for protecting workers who handle hazardous materials.  In accordance with 29 C.F.R. 1900 *et seq.*

51.     Further, the Plaintiff was engaged in an ultrahazardous activity further imposing strict liability.

52.     Defendant's failure to ensure compliance with OSHA's worker protection regulations constitute a *per se* breach of their duty of care toward Plaintiffs.

53.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs have suffered or are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Intentional and/or Reckless Failure to Warn

54.     Plaintiffs refer to and reallege Paragraphs 1 through 53 of this Complaint and incorporate them by this reference, as though fully set forth herein.

55.     Plaintiffs hereby assert their cause of action for Intentional and/or Reckless Failure to Warn.

56.     Defendant knew that the fly ash was contaminated with toxic constituents.

57.     Defendant therefore had a duty to warn Plaintiff of the presence of the toxic constituents.

58.     Defendant breached its duty by not only failing to warn Plaintiff, but actually fraudulently concealing that fact.

59.     Defendant's breach of the duty to warn caused Plaintiff to work inside the dangerous environment without any respirators, masks or personal protective equipment, and to be exposed to high concentrations of toxins during that period of his continuous exposure.

60.     As a direct and proximate result of Defendant's negligent failure to warn, Plaintiffs have suffered personal injury or are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Reckless Infliction of Emotional Distress

61.     Plaintiffs refer to and reallege Paragraphs 1 through 60 of this Complaint and incorporate them by this reference, as though fully set forth herein.

62. Plaintiffs hereby assert their cause of action for Reckless Infliction of Emotional Distress.

63. Defendant had a duty of care toward Plaintiffs not to cause them undue emotional distress.

64. Defendant's knowing, wanton, and willful exposure of Plaintiffs to toxins and other hazardous substances breached their duty of care toward Plaintiffs and upon information and belief, causing Mrs. Cunningham to have a miscarriage further enhancing such claim.

65. Defendant's exposure of Plaintiffs to toxins and other hazardous substances has caused them to suffer emotional distress to a degree that no reasonable person should be expected to suffer.

66. As a direct and proximate result of Defendant's negligent infliction of emotional distress upon Plaintiffs, Plaintiffs have suffered damages, the exact amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Fraud

67. Plaintiffs refer to and allege Paragraphs 1 through 66 of this Complaint and incorporate them by this reference, as though fully set forth herein.

68. Plaintiffs hereby assert their cause of action for Fraud.

69. Defendant represented to Plaintiff that the fly ash did not contain dangerous toxins or other hazardous substances.

70. Defendant knew that its representation was false.

71.     Defendant outrageously intended to cause Plaintiff to continue to work on the Site without respirators or personal protective equipment for its astronomical contractual monetary benefit.

72.     Plaintiff, in justifiable reliance upon Defendant's representation that the Site was safe, did work without appropriate personal protective equipment, and to be provided proper clothing cleaning protocol and instruction.

73.     Plaintiff would not have worked in this environment without appropriate personal protective equipment had he had full knowledge that it did contain toxic constituents and other hazardous substances.

74.     As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have suffered personal injuries and are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### Misrepresentation/Fraudulent Concealment

75.     Plaintiffs refer to and reallege Paragraphs 1 through 74 of this Complaint and incorporate them by this reference, as though fully set forth herein.

76.     Plaintiffs hereby assert their cause of action for Negligent Misrepresentation.

77.     Defendant represented to Plaintiffs that the Site did not contain toxic constituents or other hazardous substances.

78.     Based upon Paragraph 10 and other information known by the Defendant, Defendant knew that their representation was false, or acted with reckless regard as to whether or not its representation was false.

79. Defendant failed to use due care and honesty regarding the accuracy of its representations.

80. Defendant intended to cause Plaintiff to continue to work on the Site without respirators or personal protective equipment.

81. Plaintiff, in justifiable reliance upon Defendant's representation that the toxic fly ash was safe, did work on the Site without appropriate personal protective equipment of clothing cleaning protocols.

82. Plaintiff would not have worked on Site without respirators or personal protective equipment had he known of the dangers of prolonged exposure.

As a direct and proximate result of Defendant's fraud upon Plaintiffs, Plaintiffs have suffered or are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages, the exact amount to be proven at trial.

NINTH CLAIM FOR RELIEF

Strict Liability for Ultrahazardous or Abnormally Dangerous Activity

83. Plaintiffs refer to and reallege Paragraphs 1 through 82 of this Complaint and incorporate them by this reference, as though fully set forth herein.

84. Plaintiffs hereby assert their cause of action for Strict Liability for Ultrahazardous or Abnormally Dangerous Activity.

85. Remediation of a Superfund Cleanup Site without compliance with OSHA regulations poses an excessively high degree of risk of harm.

86. The remediation of a Superfund Site without compliance with OSHA regulations is not a common activity.

87.     The remediation of a Superfund Site without compliance with OSHA regulations was entirely inappropriate to the location at which it was carried out.

88.     There is little if any value to the community in the remediation without compliance with OSHA regulations.

89.     The remediation of a toxic Superfund Site without noncompliance with OSHA regulations therefore constitutes an ultrahazardous or abnormally dangerous activity.

90.     As a direct and proximate result of the environmental remediation without compliance with OSHA regulations and other safety standards, Plaintiffs have suffered injuries or are reasonably certain to suffer increased risk of disease, fear of disease, medical monitoring costs, pain and suffering, mental anguish, in particular damages from the toxic induced miscarriage of Taylor Cunningham proximately caused by her husband innocently bringing toxins (that was composed of including, but not limited to, arsenic, the neurotoxin mercury, barium, strontium, thallium, upon information and belief, asbestos, radioactive material, selenium, lead, silica – quartz, aluminum oxide, iron oxide, calcium oxide, boron, and other hazardous substances), other personal injuries, and other damages, the exact amount to be proven at trial.

<u>JURY DEMAND</u>

91.     Plaintiffs hereby demand a trial by jury on all issues raised herein.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

92.     For fair compensatory damages for physical injury, pain and suffering, mental anguish, increased risk of disease, fear of disease, medical expenses, medical monitoring, and compensatory damages in any amount or amounts fair to be determined by a jury at trial;

93.     Further, the Plaintiffs hereby bring an additional action for damages to which they may be fairly entitled for loss of consortium;

94.     For punitive damages in any amount fair not to exceed One Million Five Hundred Thousand Dollars ($1,500,000.00) of the amount of all Jacobs Engineering Group, Inc.'s collective contracts that were created to protect the funding taxpayers of the United States of America for the economic benefit of the TVA and the citizens of Roane County Tennessee, the Plaintiffs to this action; and

95.     On all Claims for Relief, such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 17th of January, 2014.

PEMBERTON & SCOTT, PLLP


s/James K. Scott
James K. Scott, BPR No. 016893
9539 Kingston Pike
Knoxville, TN  37922
(865) 531-1941
Attorney for Plaintiffs